# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **EMPIRE TECHNOLOGY DEVELOPMENT LLC,**<br><br>　　Plaintiff,<br><br>v.<br><br>**ADVANCED MICRO DEVICES, INC.,**<br><br>　　Defendant. | **Court No. 1:25-cv-01049-JCG** |

## OPINION AND ORDER

[Granting in part and denying in part Defendant's Motion for Judgment on the Pleadings.]

Dated: February 26, 2026

David E. Moore, Bindu A. Palapura, Nicole K. Pedi, and Andrew M. Moshos, Potter Anderson & Corroon LLP, of Wilmington, DE; Christopher J. Gaspar, Nathaniel T. Browand, Andrew Lichtenberg, Marina S. Markarian, Hannah Juge, and Rachel Wolf, Milbank LLP, of New York, N.Y. Attorneys for Plaintiff Empire Technology Development LLC.

Christine D. Haynes and Frederick L. Cottrell, III, Richards, Layton & Finger, P.A., of Wilmington, DE; Ryan K. Yagura and Nicholas J. Whilt, O'Melveny & Myers LLP, of Los Angeles, CA; Clarence Rowland, O'Melveny & Myers LLP, of San Francisco, CA; Laura B. Gore, O'Melveny & Myers LLP, of New York, N.Y. Attorneys for Defendant Advanced Micro Devices, Inc.

　　Choe-Groves, Judge: Plaintiff Empire Technology Development LLC

("Plaintiff" or "Empire") filed this case against Defendant Advanced Micro

Devices, Inc. ("Defendant" or "Advanced Micro Devices") alleging infringement of U.S. Patent Numbers 9,367,370 ("'370 Patent") and 9,671,850 ("'850 Patent") (collectively, "Asserted Patents"). Compl. Patent Infringement ("Compl.") (D.I. 1); see U.S. Patent Number 9,367,370 ("'370 Patent") (D.I. 1-1); U.S. Patent Number 9,671,850 ("'850 Patent") (D.I. 1-1).

Defendant filed Advanced Micro Devices, Inc.'s Motion for Judgment on the Pleadings for Failure to State a Claim. Advanced Micro Devices, Inc.'s Mot. J. Pleadings Failure State Claim ("Def.'s Mot.") (D.I. 22); Advanced Micro Devices, Inc.'s Opening Br. Supp. Mot. J. Pleadings Failure State Claim ("Def.'s Br.") (D.I. 23). Plaintiff opposed the motion and Defendant filed a reply brief. Pl.'s Answering Br. Opp'n Advanced Micro Devices, Inc.'s Mot. J. Pleadings Fed. R. Civ. P. 12(c) ("Pl.'s Resp. Br.") (D.I. 34); Advanced Micro Devices, Inc.'s Reply Br. Supp. Mot. J. Pleadings Failure State Claim ("Def.'s Reply Br.") (D.I. 36).

For the reasons discussed below, Defendant's Motion for Judgment on the Pleadings is granted in part and denied in part.

## BACKGROUND

Empire is a Delaware limited liability company. Compl. at ¶ 1. Dr. Ezekiel Kruglick invented the Asserted Patents and assigned all his rights, title, and interests to the Asserted Patents to Empire. Id. at ¶¶ 19–20. The United States Patent and Trademark Office issued the '370 Patent on June 14, 2016, titled "Noc

Loopback Routing Tables to Reduce I/O Loading and Off-Chip Delays[,]" and issued the '850 Patent on June 6, 2017, titled "Leakage Current Variability Based Power Management." Id. at ¶¶ 6, 13. The '370 Patent describes a "loopback simulator that intercepts inter-core messages that otherwise might go off chip and redirects those messages on chip." Id. at ¶ 10. The '850 Patent addresses "problems associated with leakage current by teaching a technique for power management based on leakage current variability." Id. at ¶ 16.

Empire alleges that Advanced Micro Devices is a public Delaware corporation with its principal place of business in Santa Clara, California. Id. at ¶ 2. Empire filed a Complaint in August 2025, alleging infringement of the Asserted Patents and seeking monetary damages and injunctive relief. See id. Advanced Micro Devices filed an Answer, Affirmative Defenses, and Counterclaims to the Complaint on November 10, 2025, and Empire filed an Answer to Defendant's Counterclaims on December 1, 2025. Advanced Micro Devices, Inc.'s Answer, Affirm. Def., Countercls. Pl.'s Compl. Patent Infringement (D.I. 19); Pl.'s Answer Def.'s Countercls. Declaratory J. (D.I. 21). Advanced Micro Devices filed a Motion for Judgment on the Pleadings for Failure to State a Claim on December 18, 2025, arguing that Empire failed to plausibly plead claims for direct, indirect, or willful infringement. Def.'s Mot; Def.'s Br.

## LEGAL STANDARD

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338, which grant the Court jurisdiction over civil actions relating to patents, plant variety protection, copyrights, and trademarks. 28 U.S.C. §§ 1331, 1338. Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings after the pleadings are closed, but early enough to not delay trial. Fed. R. Civ. P. 12(c). In considering a motion for judgment on the pleadings, the Court "must accept the truth of all factual allegations in the complaint and must draw all reasonable inferences in favor of the non-movant." Revell v. Port Auth. New York & New Jersey ("Revell"), 598 F.3d 128, 134 (3d Cir. 2010) (citing Gross v. German Found. Indus. Initiative, 549 F.3d 605, 610 (3d Cir. 2008)). Generally, the purpose of a judgment on the pleadings is "to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference." Venetec Int'l, Inc. v. Nexus Med., LLC, 541 F. Supp. 2d 612, 617 (D. Del. 2008). A motion for judgment on the pleadings can be granted "only if no relief could be granted under any set of facts that could be proved." Turbe v. Gov't of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991) (citing Unger v. Nat'l Residents Matching Program, 928 F.2d 1392, 1394–95 (3d Cir. 1991)).

A motion for judgment on the pleadings under Rule 12(c) for failure to state a claim "is analyzed under the same standards that apply to a Rule 12(b)(6) motion." Revell, 598 F.3d at 134.  Rule 8(a) requires that pleadings contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  If pleadings fail to state a claim, in whole or in part, on which a court may grant relief, a defendant may seek to dismiss a complaint under Rule 12(b)(6).  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal ("Iqbal"), 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly ("Twombly"), 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."  Id.  In considering a motion to dismiss, the Court must assume the factual allegations contained in the complaint to be true and draw all reasonable inferences in favor of the non-moving party. Twombly, 550 U.S. at 555–56.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.  Iqbal, 556 U.S. at 678; see Donald J. Kochan, While Effusive, "Conclusory" is Still Quite Elusive: The Story of a Word, Iqbal, and a Perplexing

Lexical Inquiry of Supreme Importance, 73 U. Pitt. L. Rev. 215, 307 (2011) ("'conclusory' sets a standard that requires a certain degree of case-by-case, contextual analysis.").

In patent infringement cases, allegations of infringement are governed by the Iqbal/Twombly pleading standard. Golden v. Apple Inc. ("Golden"), 819 F. App'x 930, 930–31 (Fed. Cir. 2020). There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim. Bot M8 LLC v. Sony Corp. of America ("Bot M8"), 4 F.4th 1342, 1353 (Fed. Cir. 2021).

## DISCUSSION

### I.  Direct Infringement

Liability for direct infringement arises when a party "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent[.]" 35 U.S.C. § 271(a). To plead direct infringement, a plaintiff must recite "some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." Bot M8, 4 F.4th at 1353. "[A] plaintiff cannot assert a plausible claim for infringement under the Iqbal/Twombly standard by reciting the claim elements and merely concluding that the accused product has those elements." Id. To satisfy the Iqbal pleading standard in a patent

case, "[s]pecific facts are not necessary[.]" Disc Disease Sols. Inc. v. VGH Sols., Inc., 888 F.3d 1256, 1260 (Fed. Cir. 2018) (quoting Erickson v. Pardus, 551 U.S. 89, 93 (2007)). The complaint needs to only give a defendant "fair notice of what the [infringement] claim is and the ground upon which it rests." Id.

Defendant argues that Plaintiff failed to plausibly plead direct infringement of the '370 and '850 Patents because a higher pleading standard for complex technology has not been met. See Def.'s Br. at 4–17. Defendant contends that in accordance with the Court of Appeals for the Federal Circuit's ("CAFC") decision in Bot M8, Plaintiff needed to plead an increased level of detail given the complexity of the technology and Defendant states that Plaintiff failed to plausibly plead facts to suggest that the accused products practice material claim elements of the Asserted Patents. See id. at 5, 9. The applications of Bot M8 in Lexington Luminance LLC v. Bulbrite Indus., Inc., No. 22-3787, 2023 WL 143911 (D.N.J. Jan. 10, 2023) and Vervain, LLC v. Micron Tech., Inc., No. 6:21-CV-00487-ADA, 2022 WL 23469 (W.D. Tex. Jan. 3, 2022) are cited by Defendant to support its contention that Plaintiff's Complaint needed more detailed allegations given the complexity of the technology. See id. at 5–6.

Plaintiff argues that the Complaint provided detailed allegations and element-by-element comparisons of the claim limitations to Defendant's accused products to plausibly plead direct infringement. Pl.'s Resp. Br. at 7–8. Plaintiff

states that Defendant asks for a heightened pleading standard that this Court has rejected because an identical argument for a heightened-pleading standard was denied by the Court in Staton Techiya, LLC v. Harman Int'l Indus., Inc. ("Staton Techiya"), 734 F. Supp. 3d 354, 372 (D. Del. 2024).  Id. at 2, 7.  Plaintiff contends that the Complaint's allegations are more than sufficient "to suggest that discovery may reveal evidence to supports [its] claim of infringement."  Id. at 17 (alteration in original) (citing All Terminal Servs., LLC v. Roboflow, Inc., No. 25-476-WCB, 2025 WL 2576394 (D. Del. Sept. 5, 2025), appeal dismissed, No. 2025-2150, 2025 WL 2911335 (Fed. Cir. Oct. 14, 2025)).

    The Court disagrees with Defendant that there is a heightened pleading standard for patent infringement after the CAFC's decision in Bot M8.  This Court has addressed similar arguments previously and determined that the CAFC acknowledged in Bot M8 that "the level of detail required in any given case will vary depending on a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device," but reiterated the standard established in Twombly.  Staton Techiya, 734 F. Supp. 3d at 372 (quoting Bot M8, 4 F.4th at 1352–53); see also Jumbo Tech. Co. v. Evolution US LLC, No. 1:25-CV-00660-JCG, 2026 WL 172045, at *3 (D. Del. Jan. 22, 2026) ("[T]he CAFC maintained that the Iqbal/Twombly plausibility standard does not require specific

facts, but merely enough to give a defendant notice of the claim and to permit the court to draw a reasonable inference that the defendant is liable."). Direct infringement is subject to the Iqbal/Twombly pleading standard that is not heightened and requires alleging "'enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged." Golden, 819 Fed. App'x at 930–31 (quoting In Re Bill of Lading Transm'n & Processing Sys. Patent Litig. ("In Re Bill of Lading"), 681 F.3d 1323, 1341 (Fed. Cir. 2012)).

Count I of Plaintiff's Complaint alleges that Defendant designs, manufactures, uses, and sells or offers for sale products that infringe at least Claim 14 of the '370 Patent. Compl. at ¶¶ 22–23. Claim 14 of the '370 Patent is reproduced in the Complaint and recites:

> 14. A multicore processor adapted to perform on-chip loopback, the multicore processor comprising:
> [a] a plurality of processor cores;
> [b] a controller configured to identify one or more processes executing on the plurality of processor cores, the processes adapted to communicate with each other via an off-chip network, wherein the controller is further configured to:
> 　　[c] generate a core-process-to-IP-address map;
> 　　[d] identify a designation processor core for a message based on the core-process-to-IP-address map; and
> 　　[e] identify data associated with a message to be delivered to the identified destination processor core; and
> [f] a loopback simulator at a processor hardware layer, the loopback simulator configured to deliver messages between the one or more processes via on-chip communication by processing the identified data

>back into one or more on-chip flits to be delivered to the identified destination processor core.

Compl. at ¶ 31; see '370 Patent at 16:43–60.  The Complaint states that all Advanced Micro Devices' products that include "Zen 3 microarchitecture and/or later-released generation of Zen microarchitecture" infringe at least Claim 14 of the '370 Patent.  Compl. at ¶ 23.  Plaintiff identifies products such as the "Ryzen" and "EPYC series products" ("'370 Infringing Products") as infringing products that "embody each and every limitation of at least Claim 14 of the '370 Patent[.]" Id. at ¶¶ 27, 32.  Plaintiff identifies a list of processors, by their series and model numbers, in Defendant's Ryzen line that allegedly operate with infringing microarchitecture.  Id. at ¶ 25; see Ex. C (D.I. 1-1) at 42–53.  The Complaint alleges that the '370 Infringing Products "comprise a multicore processor adapted to perform on-chip loopback."  Id. at ¶ 33.

Exemplary images are provided to show that the '370 Infringing Products include a "Core Complex Die" that "houses a single group of processor cores called a Core Complex" and a controller "configured to identify one or more processes executing on the plurality of processor cores" that are "adapted to communicate with each other via an off-chip network."  Id. at ¶¶ 39–42.  The Complaint claims that the '370 Infringing Products include a controller that generates "a core-process-to-IP-address map" that identifies "data associated with a message to be delivered to the identified designation processor core," and

explains that in the "EPYC 7003 Series processors with Zen 3 microarchitecture," "the CCDs connect to memory, I/O, and each other through the I/O die [], where the [I/O die] contains, e.g. UMCs." Id. at ¶¶ 49–50. Exemplary images are also included in the Complaint with Plaintiff's explanations to show how the '370 Infringing Products "include a loopback simulator" in connection with Claim 14's element (f). Id. at ¶¶ 37, 53–59.

Count II of the Complaint alleges that Defendant designs, manufactures, uses, and sells or offers for sale products that infringe at least Claim 12 of the '850 Patent. Id. at ¶¶ 65–67. Claim 12 of the '850 Patent is reproduced in the Complaint as follows:

> 12. A system to provide a leakage current variability based power management, the system comprising:
> [a] a memory; and
> [b] a processor coupled to the memory, wherein the processor includes one or more cores and is configured to execute a power management application in conjunction with one or more instructions stored in the memory, [c] wherein the power management application is configured to: receive computation data from a power controller and one or more processor instruction counters (PIC) of one of the one or more cores of the processor;
> [d] generate a table of linear combination samples from the computation data, wherein the one or more instructions are grouped based on one or more sub-units of a selected core associated with each one of the one or more instructions, and wherein each of the linear combination samples include a power usage value for a sub-unit of the selected core;
> [e] generate a micro-architectural leakage map of the selected core from the linear combination samples within the table;

> [f] in response to detection that a second sub-unit being deactivated based on the micro-architectural leakage map, direct a thread of a subset of the one or more instructions to a first sub-unit;
> [g] in response to detection that the first sub-unit is unable to compensate the deactivation of the second sub-unit, reactivate the second sub-unit;
> [h] execute a thread migration operation to move the thread from the first sub-unit to the second sub-unit, the thread to be executed by the second sub-unit; and
> [i] in response to a completion of an execution of the thread; move the thread back to the first sub-unit, and deactivate the second sub-unit.

'850 Patent at 16:60–17:27; see Compl. at ¶ 73[1]. The Complaint alleges that Advanced Micro Devices' products that include "Zen 3+ microarchitecture and/or a later-released generation of Zen microarchitecture" infringe Claim 12 of the '850 Patent. Compl. at ¶ 66. Ryzen and EPYC series products are identified as infringing products ("'850 Infringing Products"). Id. at ¶ 69. Plaintiff identifies a list of processors in Defendant's Ryzen line, by their series and model numbers, that allegedly operate with infringing microarchitecture. Id. at ¶ 68; see Ex. D (D.I. 1-1) at 54–61. The Complaint describes how each limitation of Claim 12 of the '850 Patent is infringed. Compl. at ¶¶ 74–99.

For example, exemplary images are provided to show that the '850 Infringing Products perform a method to provide a leakage current variability

---

[1] The Complaint reproduced Claim 12 of the '850 Patent in its entirety but stated that Claim 12 is "a method" rather than "a system" as is stated in the '850 Patent. See Compl. at ¶ 73. This error is minor and remedied by Plaintiff attaching the '850 Patent to the Complaint in full which provided the accurate wording of Claim 12. '850 Patent at 16:60–17:27; see Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

based power management through the "Zen 3+" core. Id. at ¶¶ 75–82. Plaintiff alleges that the '850 Infringing Products include a processor and memory that can "execute a power management application" with instructions stored in the memory. Id. at ¶¶ 83–86. The Complaint alleges that the '850 Infringing Products are configured to receive computation data from a power controller and one or more processor instruction counters. Id. at ¶ 87. The '850 Infringing Products allegedly configure a power management application to generate a table of linear combination samples from the computation data. Id. at ¶ 91. Plaintiff describes threading in the power management application and simultaneous multithreading technology in Defendant's microarchitectures that reads on Claim 12 of '850 Patent. Id. at ¶¶ 94–99.

The Court concludes that Empire identified microarchitecture in Defendant's products that allegedly infringe Claim 14 of the '370 Patent and Claim 12 of the '850 Patent. The Complaint provides detailed explanations with exemplary images connecting how the products infringe on each limitation of Claims 14 and 12 in the Asserted Patents. Accepting Plaintiff's factual allegations in the Complaint as true and drawing all reasonable inferences in Plaintiff's favor, the Complaint plausibly pleads claims for direct infringement. See Revell, 598 F.3d at 134. Plaintiff has met the Iqbal/Twombly standard and sufficiently pled facts to state a claim for direct infringement of the Asserted Patents. The Court concludes that the

Complaint provided Defendant with fair notice of infringement, and the Court denies Defendant's Motion for Judgment on the Pleadings for the claims of direct infringement in Counts I and II.

## II. Indirect Infringement

Before analyzing if a claim for indirect infringement has been pled sufficiently, the Court must first resolve if Plaintiff properly alleged direct infringement. See In Re Bill of Lading, 681 F.3d at 1333 ("It is axiomatic that there can be no inducement or contributory infringement without an underlying act of direct infringement.") (quotation omitted). As Plaintiff has pled direct infringement sufficiently, the Court proceeds to examine the indirect infringement claims.

To plead induced infringement under 35 U.S.C. § 271(b), a complaint must plead facts plausibly showing that the accused infringer specifically intended another party to infringe the patent and knew that the other party's acts constituted infringement. Lifetime Indus., Inc. v. Trim-Lok, Inc., 869 F.3d 1372, 1379 (Fed. Cir. 2017); see also 35 U.S.C. § 271(b) ("Whoever actively induces infringement of a patent shall be liable as an infringer."). A plaintiff is required to allege facts supporting a reasonable inference that the defendant had knowledge of the patent-in-suit. Global-Tech Appliances, Inc. v. SEB S.A. ("Global-Tech"), 563 U.S. 754, 764–66 (2011). "[U]nlike direct infringement, the patentee must show that the

accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement." Microsoft Corp. v. DataTern, Inc., 755 F.3d 899, 904 (Fed. Cir. 2014) (citing Global-Tech, 563 U.S. at 764–66).  Without knowledge of infringement, there is not enough to establish liability for induced infringement.  See Global-Tech, 563 U.S. at 765–66.  The United States Supreme Court reaffirmed its holding in Global-Tech and clarified that proof of induced infringement requires not only knowledge of the patent, but also proof that the defendant "knew as well that 'the induced acts constitute patent infringement.'"  Commil USA, LLC v. Cisco Sys., Inc. ("Commil USA"), 575 U.S. 632, 640 (2015) (citing Global-Tech, 563 U.S. at 766).

    Specific intent is a distinct element from the knowing inducement of infringing acts.  "A party asserting a claim of induced infringement must plead facts plausibly demonstrating that there has been direct infringement, and that 'the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent.'" Tonal Sys., Inc. v. ICON Health & Fitness, Inc., No. 20-cv-1197-LPS, 2021 WL 1785072, at *3 (D. Del. May 5, 2021) (quoting Vita-Mix Corp. v. Basic Holding, Inc., 581 F.3d 1317, 1328 (Fed. Cir. 2009)).  If actual knowledge is not adequately pled, a patentee can establish knowledge of patent infringement by alleging that the defendant was willfully blind, which requires showing that the defendant: (1)

subjectively believed that there was a high probability that the induced acts constituted infringement; and (2) took deliberate actions to avoid learning of that fact.  Global-Tech, 563 U.S. at 769.

Defendant claims that Plaintiff failed to plead sufficient facts showing that Advanced Micro Devices had pre-suit knowledge of the Asserted Patents.  Def.'s Br. at 20.  Defendant states that Plaintiff only alleges in the Complaint that "[a]t least since receiving notice of this Complaint, [Advanced Micro Devices] has known of the Asserted Patents."  Id. (quotation omitted).  Plaintiff agrees that it alleges that Defendant has had knowledge of the patent and infringement "since receiving notice of this Complaint."  Pl.'s Resp. Br. at 19.  Plaintiff argues that Courts in this District have held that a defendant's knowledge of the asserted patents and infringement may be pled by reference to the filing of a lawsuit for both indirect and willful infringement, but acknowledges that this Court has held that "[t]he complaint alone cannot operate to establish knowledge . . . without being amended[.]".  Id. at 18–19 (citing Omni Medici, Inc. v. Whoop, Inc., No. 25-140-WCB, 2025 WL 2720998, at *2–3 (D. Del. Sept. 24, 2025); Staton Techiya, 734 F. Supp. 3d at 365; ESCO Grp. LLC v. Deere & Co., No. 20-1679-WCB, 2023 WL 4199413, at *7–8 (D. Del. June 22, 2023)).  Plaintiff requests the opportunity to amend its Complaint to assert post-suit knowledge if the Court deems it necessary.  Id. at 19.

A complaint can sufficiently provide the knowledge required for indirect infringement after an amended complaint is filed.  <u>Staton Techiya</u>, 734 F. Supp. 3d at 365.  However, without being amended, the complaint alone cannot operate to establish knowledge.  <u>Id.</u> at 365–66.  Both induced and contributory infringement require knowledge of the patent in suit and knowledge of patent infringement.  <u>Commil USA</u>, 575 U.S. at 639 (citing <u>Aro Mfg. Co. v. Convertible Top Replacement Co.</u>, 377 U.S. 476, 488 (1964)).

Plaintiff's Complaint does not allege any facts to establish pre-suit knowledge for indirect infringement.  Although Plaintiff states that Defendant infringes the Asserted Patents with willful blindness, the Complaint fails to plead any facts to support these allegations.  Compl. at ¶¶ 29–30, 71–72.  The Court concludes that Plaintiff's Complaint fails to plead sufficient facts to allege adequate knowledge or willful blindness and dismisses the induced and contributory infringement claims in Counts I and II.  The Court will permit Plaintiff leave to amend the Complaint to provide sufficient post-suit knowledge for the claims of indirect infringement.

### III. Willful Infringement

Under 35 U.S.C. § 284, the Court may increase the amount of damages assessed by up to three times.  35 U.S.C. § 284.  The Supreme Court has said that enhanced damages:

> are not to be meted out in a typical infringement case, but are instead designed as a "punitive" or "vindictive" sanction for egregious infringement behavior. The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate.

Halo Elecs., Inc. v. Pulse Elecs. Inc. ("Halo"), 579 U.S. 93, 103–04 (2016). For willful infringement, facts must be alleged "plausibly demonstrating that the accused infringer had committed subjective willful infringement as of the date of the filing of the willful infringement claim[.]" Disruptive Res., LLC v. Ballistic Barrier Prods. Inc., No. 1:24-CV-00321-JCG, 2025 WL 2879447, at *9 (D. Del. Oct. 9, 2025) (quoting Välinge Innovation AB v. Halstead New England Corp., No. 16-CV-1082-LPS-CJB, 2018 WL 2411218, at *12 (D. Del. May 29, 2018), report and recommendation adopted, 2018 WL 11013901 (D. Del. Nov. 6, 2018)) (alterations in original). "Knowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages." WBIP, LLC v. Kohler Co., 829 F.3d 1317, 1341 (Fed. Cir. 2016) (citing Halo, 579 U.S. at 1932–33).

Plaintiff's Complaint states that Defendant's infringement of the Asserted Patents has been "willful" since receiving notice of the Complaint, but pleads no facts regarding pre-suit knowledge of the patent. Compl. at ¶¶ 60, 100. The Court concludes that Plaintiff's Complaint fails to plead sufficient facts to allege adequate knowledge and dismisses the claims of willful infringement in Counts I

and II.  The Court will permit Plaintiff leave to amend the Complaint to assert post-suit knowledge for claims of willful infringement.

Accordingly, for the foregoing reasons, the Court denies Defendant's Motion for Judgment on the Pleadings on the claims of direct infringement in Counts I and II, grants Defendant's Motion for Judgment on the Pleadings on the claims of induced, contributory, and willful infringement in Counts I and II, and grants Plaintiff leave to amend its Complaint.

## CONCLUSION

Upon consideration of Defendant's Motion for Judgment on the Pleadings (D.I. 22), and all other papers and proceedings in this action, it is hereby

**ORDERED** that Defendant's Motion for Judgment on the Pleadings (D.I. 22) is granted in part and denied in part; and it is further

**ORDERED** that Plaintiff shall amend its Complaint (D.I. 1) on or before March 12, 2026; and it is further

**ORDERED** that Defendant shall file its response on or before March 26, 2026.

IT IS SO ORDERED this 26th day of February, 2026.

    /s/ Jennifer Choe-Groves
Jennifer Choe-Groves
U.S. District Court Judge*

---

*Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.